UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ANTONIO DAVIS,                                 ) | Civil Action No.: 4:12-cv-3429-RMG-TER |
| )| |
| Plaintiff,           ) | |
| ) | |
| -vs-                                           ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| RICHLAND COUNTY, SHERIFF LEON   ) | |
| LOTT, DEP. SARA GIRON, ADRIAN   ) | |
| THOMPSON, and DEP. ADAM          ) | |
| CORNWELL,                                      ) | |
| ) | |
| Defendant.         ) | |
| _____ ) | |

**I.      INTRODUCTION**

Plaintiff, who is proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging excessive force and other claims arising out of a traffic stop. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e) and (g), DSC. Presently before the Court is Defendants' Motion for Summary Judgment (Document # 76). Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendant's Motion for Summary Judgment, could result in dismissal of his Complaint. Plaintiff requested an extension of time to respond to Defendants' Motion, which was granted and the deadline was extended to January 30, 2014. Plaintiff did not file a response to the Motion, and the undersigned entered a Report and Recommendation that his case be dismissed for failure to prosecute under Rule 41(b), Fed.R.Civ.P.

Plaintiff filed an objection to the Report and Recommendation, indicating that he timely mailed a Response to the Motion for Summary Judgment, which the court did not receive. He attached a copy of his Response to his Objection. Thus, the district judge declined to accept the

recommendation and recommitted the case back to the undersigned for further review.

## II.     FACTS

Plaintiff alleges that Defendants used excessive force during a traffic stop on March 3, 2011, when after Plaintiff ran from the car into a wooded area, he was hit with a taser in the buttocks and then shot in the leg. Amended Complaint (Document # 58). The evidence[1] in the record reveals that on March 3, 2011, Defendant Thompson stopped a white Buick Lesabre for a traffic violation[2] in a high crime area. Thompson Aff. ¶ 3 (Ex. to Def. Motion); Giron Aff. ¶ 4 (Ex. to Def. Motion). A vehicle matching that description was suspected of using drug paraphernalia. Thompson Aff. ¶ 4. Upon contact with the driver and Plaintiff, Defendant Giron detected the smell of marijuana emanating from the car. Giron Aff. ¶ 5. Giron also recognized that Plaintiff was wearing clothes indicative of Folk Nation gang members. Id. Further, Plaintiff appeared to Giron to be tense and nervous and he made several quick glances in her direction. Giron Aff. ¶ 6. Due to the smell of marijuana in the car, the clothing indicative of gang affiliation, and the nervous behavior of the occupants, both the Plaintiff and driver were asked to step out of the vehicle. Giron Aff. ¶¶ 6,7;

---

[1] Plaintiff includes a section entitled "Statement of Facts" in his Response, but cites no evidence to support these facts. Plaintiff's Response is not signed by Plaintiff, much less a sworn statement or an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746. Thus, the undersigned has not considered Plaintiff's arguments in his Response as evidence. See Fed.R.Civ.P. 56 ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."). Later in his Response, he discusses the evidence he submitted, including two DVDs, witness and officer statements, an investigative report, and an affidavit submitted by his mother, which the court has considered. Plaintiff also filed a Verified Complaint, and thus, his allegations may considered as evidence. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991) ("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.").

[2] The driver was charged with "failure to use turn signal" and was found guilty during a jury trial in Magistrate's Court. Thompson Aff. ¶ 12.

Thompson Aff. ¶¶ 7, 8; Thompson Car Cam Video (Ex. to Pl. Response). Once the Plaintiff arrived at the back of the car, Giron attempted to perform a Terry frisk to ensure Plaintiff had no weapons. Giron Aff. ¶ 8; Thompson Aff. ¶¶ 8, 9; Thompson Car Cam Video. Giron immediately felt a hard object near Plaintiff's waistband and attempted to place Plaintiff in handcuffs for officer safety, but Plaintiff began to run towards Carlton Drive. Giron Aff. ¶¶ 8, 9; Thompson Aff. ¶ 9; Thompson Car Cam Video. Both Giron and Thompson pursued Plaintiff on foot. Giron Aff. ¶ 10; Thompson Aff. ¶ 10; Thompson Car Cam Video.

While Plaintiff was fleeing from the scene, he engaged in a physical confrontation with a bystander, who saw a gun in Plaintiff's possession, which ended with Plaintiff stating, "I will shoot you." Giron Aff. ¶¶ 11, 12, 13; Riley Voluntary SLED Statement (Ex. B to Giron Aff.); Reese Voluntary SLED Statement (Ex. C to Giron Aff.). Plaintiff then entered some woods and got down on his hands and knees to crawl through the vines. Giron Aff. ¶ 14. Giron pursued Plaintiff through the woods and vines, giving him verbal commands to stop, and based on her observations of the Plaintiff to that point, she deployed the taser and hit Plaintiff in the buttocks. Id. at ¶¶ 14, 15; Reese Voluntary SLED Statement.

The facts are disputed as to what occurred next. Viewing the evidence in the light most favorable to Plaintiff, the taser incapacitated Plaintiff yet Giron fired four to five shots from her weapon, hitting Plaintiff once in the leg. Verified Complaint. Defendant Cornwell then arrived on the scene and kneed and hit Plaintiff in the head several times before handcuffing him.[3] Id. Plaintiff

---

[3]Giron avers that the taser had no effect on the Plaintiff and he turned and pointed a silver firearm at Giron. Giron Aff. ¶ 15. Fearing for her life, Giron fired four shots from her department issued firearm at the Plaintiff. Id. at ¶ 16. Giron stopped firing once she saw that the Plaintiff had thrown down his firearm and put his hands up. Id. Defendant Cornwell avers that he arrived on the scene, heard shots fired, entered the wooded area, and placed Plaintiff in handcuffs. Cornwell Aff. ¶ 6 (Ex. to Def. Motion); Cornwell Car Cam Video (Ex. to Pl. Response). Both Giron and Cornwell observed a firearm lying near Plaintiff's hands. Giron Aff. ¶ 18; Cornwell Aff. ¶ 7. At

denies ever having a weapon in his possession. Id.

## III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record,

---

that point, several other back-up units arrived and Plaintiff was transported to Richland Memorial Hospital for treatment. Giron Aff. ¶ 19; Cornwell Aff. ¶ 8.

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.  DISCUSSION

### A.  42 U.S.C. § 1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

#### 1.  "Persons" Under § 1983

Defendants Thompson, Giron, Cornwell, and Lott argue that they are entitled to Eleventh Amendment immunity from suit to the extent Plaintiff has sued them in their official capacities. It is well settled that only "persons" may act under color of state law; therefore, a defendant in a § 1983 action must qualify as a "person." In Will v. Mich. Dep't of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court held that neither a state, a state agency, nor a state official in his or her official capacity is a "person" for purposes of a § 1983

damages action. Will, 491 U.S. at 71. See Quern v. Jordan, 440 U.S. 332, 340, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (when a state is the real party in interest because damages are sought from it, the state is entitled to protection from award by sovereign immunity); Florida Dept. of State v. Treasure Salvors, Inc., 458 U.S. 670, 684, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982) (state agencies are arms of the state and entitled to Eleventh Amendment immunity); Ram Ditta v. Maryland Nat'l Capital Park & Planning Comm'n, 822 F.2d 456, 457 (4th Cir.1987) (same). A Sheriff in South Carolina and his Sheriff's Deputies are arms of the state and, thus, are entitled to Eleventh Amendment immunity in their official capacities. Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir.1996) (holding that sheriffs are entitled to Eleventh Amendment immunity as arms of the state); McCall v. Williams, 52 F.Supp.2d 611, 615 (D.S.C.1999) (extending immunity to sheriff's deputies as well). Accordingly, summary judgment is appropriate as to any claims under § 1983 raised against Defendants Thompson, Giron, Cornwell, and Lott in their official capacities.

    **2.    Vicarious Liability**

Defendants Lott and Richland County argue that summary judgment is appropriate as to any § 1983 claims against them because they cannot be held liable under a theory of vicarious liability. As a general rule, the doctrine of vicarious liability or respondeat superior is not available to a § 1983 Plaintiff as a means to create liability of a municipality or a state-actor supervisor for the acts or his/her subordinate. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The municipality or supervisory employee, however, may be held liable under § 1983 for an official policy or custom that inflicts an injury on a citizen of a constitutional dimension. Id. at 694-95. Plaintiff does not allege that a specific policy existed that deprived him of a constitutional right. However, he argues that a custom exists of allowing excessive force by officers to go unpunished. In this instance, liability will attach to these Defendants only if there was an

"irresponsible failure by a municipal policy maker to put a stop to or correct a widespread pattern of unconstitutional conduct by correctional officers, of which the specific violation is simply an example." Spell v. McDaniel, 824 F.2d 1380, (4th Cir. 1987).

Here, although Plaintiff states generally in his Response that "there is a well-documented history of complaints dealing with the use of excessive force" and that "Defendant Richland County has over look [sic] or failed to properly investigate the numerous complaints of excessive [force]," Pl. Response p. 4, he fails to present any evidence to support these assertions. He also argues that Defendant Lott "has established a custom and widespread continuous practice of allowing Richland County Sheriff Department officers to use excessive force against citizens without facing discipline." P. Response p. 5. However, again, he fails to present any evidence to support this argument. Accordingly, summary judgment is appropriate as to Plaintiff's § 1983 claims against Richland County and Lott.

### 3.     Excessive Force

Plaintiff alleges that Defendant Giron used excessive force during the traffic stop and subsequent pursuit after Plaintiff began to run. Protection against force used during arrest is provided by the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). All claims of use of excessive force during an investigatory stop or arrest or other seizures are governed by the Fourth Amendment's "objective reasonableness" standard. Id. The test for excessive force in the arrest context requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government's interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The standard for measuring reasonableness of force is wholly objective. The objective reasonableness test requires careful attention to the circumstances of a particular case, including the

severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting seizure or attempting to evade seizure by flight. Graham, 490 U.S. at 396; Foote v. Dunagan, 33 F.3d 445 (4th Cir.1994). "In considering whether an officer used reasonable force, a court must focus on the moment that the force is employed," Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (citing Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir.1996)), recognizing that officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. Graham, 490 U.S. at 396.

Plaintiff argues that Giron used excessive force when she tased him and then shot him in the leg. The record reveals that, at the moment the Giron used the taser, Giron was aware of the following: Plaintiff appeared nervous and was wearing clothing indicating a gang affiliation, he smelled of marijuana, as Giron performed a Terry frisk she felt a hard object near the waistline of his pants, Plaintiff then fled and ran through a neighborhood, including down several streets and through the yard of a house, Plaintiff had an altercation with a bystander[4] and then continued to run into the woods.

In applying the objective reasonableness test, the undersigned notes that, although Plaintiff was not suspected of any specific crime at the time Giron began to frisk him, he attempted to evade seizure by running from Giron, who had directed him to place his hands on the back of the vehicle, and he exposed the officers and third persons, such as the bystander with whom he had an altercation, to risk of harm.

"[T]he use of tasers or other weapons does not violate the Fourth Amendment per se." Fils v. City of Aventura, 647 F.3d 1272, 1276 n. 2 (11th Cir.2011). As noted above, the issue is whether

---

[4]Giron did not learn until later that Plaintiff had a firearm and threatened to shoot the bystander. Giron Aff. ¶ 13; Reese Voluntary SLED Statement.

the amount of force used was excessive under the circumstances. Riley v. Dorton, 115 F.3d 1159, 1161 (4th Cir.1997). Courts have held that use of a taser gun to subdue a belligerent suspect who has repeatedly ignored police instructions is not excessive. See, e.g., Zivojinovich v. Barner, 525 F.3d 1059, 1073 (11th Cir.2008) ("We have previously held that in a 'difficult, tense and uncertain situation' the use of a taser gun to subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police is not excessive force."); McKenney v. Harrison, 635 F.3d 354, 360 (8th Cir.2011) (affirming the lower court's grant of summary judgment on excessive force claim where a taser was used on an individual who made a sudden movement toward a window, which the officers "reasonably interpreted" as an active attempt to evade arrest by flight). Here, it was not unreasonable for Giron to use her taser to stop Plaintiff, who was actively resisting seizure by fleeing from Giron and refusing to obey her verbal commands to stop. Thus, Plaintiff's excessive force claim fails with respect to Giron's use of the taser.

Following her use of the taser, Giron shot at Plaintiff four times, hitting him in the leg once. Material facts are in dispute with respect to these events. Giron avers that the taser had little effect on Plaintiff and he rapidly turned toward her and pointed a firearm. In his verified complaint, Plaintiff states that he was unarmed and incapacitated from the taser at the time Giron shot him.

"The intrusiveness of a seizure by means of deadly force is unmatched." Tennessee v. Garner, 471 U.S. 1, 9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Therefore, a police officer may use deadly force only when he has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others[.]" Id. at 11, 105 S.Ct. 1694. Viewing the evidence in the light most favorable to Plaintiff, at the time Giron shot him, he was on the ground, incapacitated from the taser and unarmed. Thus, at the time Giron used deadly force, Plaintiff no longer posed a threat of serious physical harm to anyone. See, e.g., Brockington v. Boykins, 637, 503 (4th Cir. 2011) (in the context

of a motion to dismiss, finding plaintiff sufficiently plead a cause of action for excessive force where officer stood over victim and shot him multiple times while he was unarmed and lying on the ground after the officer initially immobilized him by shooting him in the hand).

As to Defendant Cornwell, viewing the evidence in the light most favorable to Plaintiff, after Plaintiff had been tased and shot, Cornwell kneed and hit him in the head several times before handcuffing him.  Thus, at the time Cornwell used force, Plaintiff did not pose an immediate threat to the safety of the officers or others nor was he actively resisting seizure or attempting to evade seizure by flight. Graham, 490 U.S. at 396.

In sum, a dispute of fact exists as to the circumstances that occurred immediately prior to the deadly force used by Giron when she shot Plaintiff, and a dispute of fact exists as to whether Cornwell used force against Plaintiff upon his arrival on the scene.  Thus, summary judgment is inappropriate as to these issues.

### 4.     Racial Profiling

Plaintiff alleges that Giron racially profiled him by labeling him a gang member.  "Racial profiling is generally understood to mean the improper use of race as a basis for taking law enforcement action." Chavez v. Illinois State Police, 251 F.3d 612, 620 (2001). Allegations of racial discrimination are actionable under § 1983, see, e.g., Henry v. Van Cleve, 469 F.2d 687 (5th Cir.1972), but merely conclusory allegations of discrimination are insufficient to state a claim, Chapman v. Reynolds, 378 F.Supp. 1137 (W.D.Va.1974). Other than his own speculation, the Plaintiff has not set forth any allegations or additional facts to support this claim of racial profiling. Rather the record reveals that Giron suspected a possible gang affiliation based upon Plaintiff's clothes, not his race.  Further, Giron's decision to ask Plaintiff to step out of the car[5] was not based

---

[5]To the extent Plaintiff claims that his constitutional rights were violated by being asked to exit the vehicle while a passenger at a traffic stop, that claim fails. An officer may, as a matter of

solely on her suspicion of a possible gang affiliation, but also because they were in a high crime area, the vehicle in which Plaintiff was passenger matched the description of a vehicle with suspected drug involvement, Giron detected the smell of marijuana, and Plaintiff appeared tense and nervous upon Giron's approach to his side of the vehicle. For these reasons, Plaintiff fails to establish a claim of racial discrimination or racial profiling against Giron.

### 5.      Qualified Immunity

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendants asserts that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified immunity.

"The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing." Akers v. Caperton, 998 F.2d 220, 225–26 (4th Cir.1993). The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or

---

course, direct that a passenger in a lawfully stopped car exit the vehicle. Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882 (1997).

>     constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir.1994) (internal citations omitted), cert. denied, 516 U.S. 824, 116 S.Ct. 89, 133 L.Ed.2d 45 (1995). As discussed above, disputes of fact exist as to the circumstances that occurred immediately prior to Giron's use of deadly force and as to whether Cornwell used any force against Plaintiff. Giron is not entitled to qualified immunity because at the time of her disputed conduct, it was clearly established that an officer may not seize an unarmed, non-dangerous suspect by using deadly force. Tennessee v. Garner, 471 U.S. 1, 11–12, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Likewise, it was clearly established at the time of Cornwell's disputed conduct that "officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity." Bailey v. Kennedy, 349 F.3d 731, 744–45 (4th Cir.2003) (quoting Jones v. Buchanan, 325 F.3d 520, 531–32 (4th Cir.2003)); see also Meyers v. Baltimore County, Md., 713 F.3d 723, 734 (4th Cir. 2013) (noting the Fourth Circuit's repeated holdings that "it is not required that a right violated already have been recognized by a court in a specific context before such right may be held "clearly established" for purposes of qualified immunity.). Thus, Giron is not entitled to qualified immunity on Plaintiff's § 1983 excessive force claim arising out of her shooting Plaintiff and Cornwell is not entitled to qualified immunity of Plaintiff's § 1983 excessive force claim against him.

However, as to Plaintiff's remaining § 1983 claims, that is, his Monell supervisory liability claims against Lott and Richland County, his excessive force claim against Giron arising out of her

-12-

use of the taser, and his racial profiling claim, even if there was a violation, these Defendants are entitled to qualified immunity because their actions did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known.

### B.     State Law Claims

Plaintiff also asserts state law claims for defamation[6] and "post-traumatic stress."[7]  Because Richland County is a political subdivision of the state of South Carolina, S.C. Code Ann. § 15-78-20(h), Plaintiff's state law claims against Richland County and its employees acting within the scope of their official duties are subject to the provisions of the South Carolina Tort Claims Act (SCTCA).  The SCTCA provides the "exclusive civil remedy available for any tort committed by a governmental entity, its employees, or its agents except as provided in Section 15–78–70(b)."  S.C.Code Ann. § 15–78–20(b).  S.C. Code Ann. § 15-78-70(b) provides that "[n]othing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude."  Thus, Richland County cannot not held liable for the actions of its employees if they rise to the level of intent to harm, an element present in a cause of action for intentional infliction of emotional distress, which the undersigned presumes is what Plaintiff means by stating "post-traumatic stress."  However, the SCTCA does not preclude Plaintiff from asserting this claim against the individual Defendants.  See

---

[6]Plaintiff asserts claims for both defamation and slander.  However, slander is simply the term for spoken defamation.  See  Holtzscheiter v. Thomson Newspapers, Inc., 332 S.C. 502, 508, 506 S.E.2d 497, 501 (1998).

[7]The undersigned presumes that Plaintiff brings these claims under state law because neither defamation nor emotional distress are cognizable under § 1983.  See Paul v. Davis, 424 U.S. 693, 697-710 & nn. 3-4, 96 S.Ct. 1155 (1976) (defamation); Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir.1985) (emotional distress); Mitchell v. Cannon, 2009 WL 8424202 at * 18 (D.S.C. 2009) (emotional distress).

Roberts v. City of Forest Acres, 902 F.Supp. 662, 671 (D.S.C.1995) (finding that the governmental entity is not liable under the Act, and the employee is personally liable, when the employee's conduct falls within the exceptions listed in section 15–78–70(b)); Smith v. Ozmint, 394 F.Supp.2d 787, 793 (D.S.C. 2005) (holding plaintiff could sue state employees under South Carolina law, in their individual capacities, for intentional infliction of emotional distress).  Defendants argue that summary judgment is appropriate on Plaintiff's intentional infliction of emotional distress claim because the SCTCA specifically excludes such a claim.  S.C.Code Ann. § 15–78–50 (2005) ("Any person who may suffer a loss proximately caused by a tort of the State, an agency, a political subdivision, or a governmental entity, and its employee acting within the scope of his official duty may file a claim as hereinafter provided."); S.C. Code Ann. § 15–78–30 (2005) (" 'Loss' ... does not include the intentional infliction of emotional harm.").  Accordingly, summary judgment is appropriate on this claim against Richland County.  However, Defendants do not address Plaintiff's intentional infliction of emotional distress claim as to the individual Defendants, and so that claim must move forward.

Plaintiff's defamation fails.  To establish a defamation claim, a plaintiff must prove: (1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable regardless of harm or the publication of the statement caused special harm.  See Erickson v. Jones St. Publishers, LLC, 368 S.C. 444, 465, 629 S.E.2d 653, 664 (2006); Fleming v. Rose, 350 S.C. 488, 494, 567 S.E.2d 857, 860 (2002).  Plaintiff asserts in his Complaint that he was publicly humiliated when Lott and Giron "got on national TV and lie [sic] about the advents [sic] that have taken place that afternoon of March 3, 2011, in an attempt and trying to cover up the violation of my rights."  However, this statement is insufficient to create an issue of fact.  Plaintiff fails to identify any specific language or

statements said about him by Lott and Giron.[8] Thus, Plaintiff fails present sufficient evidence to create a dispute of fact as to his defamation claim.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 76) be denied as to Plaintiff's excessive force claim against Cornwell and against Giron with respect to her use of her firearm and granted in all other respects.[9]

        s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 2, 2014
Florence, South Carolina

**The parties are directed to the important notice on the following page.**

---

[8] To the extent these Defendants reported on the charges faced by Plaintiff, it is well-held that fair and impartial media reports of matters of public interest, including the content of public files on judicial proceedings, are qualifiedly privileged. Jones v. Garner, 250 S.C. 479, 487, 158 S.E.2d 909, 913 (1968). "The privilege extends only to a report of the contents of the public record and any matter added to the report by the publisher, which is defamatory of the person named in the public records, is not privileged." Id. It is undisputed that, as a result of Plaintiff's actions on March 3, 2011, he was indicted by a grand jury on the charges of attempted murder, resisting arrest with a deadly weapon, two counts of pointing and presenting a firearm, and possession of firearm or ammunition by person convicted of violent felony. Giron Aff. Ex. D.

[9] Because Defendants do not move for summary judgment as to Plaintiff's claim for intentional infliction of emotional distress against the individual defendants in their individual capacities, it is recommended that this claim survive as well.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk<br>
United States District Court<br>
Post Office Box 2317<br>
Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).